## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
## GAINESVILLE DIVISION

**DAVID W. HEYSEL, JR.,**

      **Plaintiff,**

**vs.**                      **Case No.  1:17cv149-MW/CAS**

**NANCY A. BERRYHILL,**
**Deputy Commissioner for**
**Operations, performing the**
**duties and functions not reserved**
**to the Commissioner of Social**
**Security,**[1]

      **Defendant.**

_____/

## <u>REPORT AND RECOMMENDATION</u>

This is a Social Security case referred to the undersigned magistrate

judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and

Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C.

§ 405(g) for review of the final determination of the Deputy Commissioner

for Operations (Commissioner) of the Social Security Administration (SSA)

denying Plaintiff's application for a period of disability and Disability Income

Benefits (DIB) filed pursuant to Title II of the Social Security Act.  After

---

[1]  Defendant's title has changed.  See
https://www.ssa.gov/agency/commissioner.html (last viewed Apr. 18, 2018).

consideration of the entire record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On July 19, 2013, Plaintiff, David W. Heysel, Jr. (Plaintiff or claimant), filed an application for DIB, alleging disability beginning October 1, 2011 (November 24, 2010, as amended at the hearing, Tr. 35-36), based on degenerative disc disease, spinal stenosis, cervical and lumbar, cervical spondylosis, and depression. Tr. 17, 72, 166-67, 191.[2] Plaintiff last met the insured status requirements for DIB on December 31, 2011. Tr. 17, 70, 219.

Plaintiff's application was denied initially on November 23, 2013, and upon reconsideration on March 11, 2014. Tr. 17, 94-96, 103-07. On June 11, 2014, Plaintiff requested a hearing. Tr. 17. On February 3, 2016, the video hearing was held before Administrative Law Judge (ALJ) M. Hart, who presided over the hearing from Jacksonville, Florida. Tr. 17, 32. Plaintiff appeared and testified in Gainesville, Florida. Tr. 17, 32-34, 36-. Plaintiff was represented by Pamela C. Dunmore, an attorney.

---

[2] Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

Tr. 17, 32, 34, 108-10.  C. Kimball Heartsill, an impartial vocational expert, testified during the hearing.  Tr. 17, 60-68, 248-51 (Resume).  During the hearing, Exhibits 1A through 4A, 1B through 15B, 1D through 9D, 1E through 12E, and 1F through 8F were received into evidence.  Tr. 28-31, 36.  On March 1, 2016, the ALJ issued a decision and denied Plaintiff's application for benefits, concluding that Plaintiff was not disabled from November 24, 2010, the amended alleged onset date, through December 31, 2011, the date last insured.  Tr. 17-27.

On March 14, 2016, Plaintiff requested review of the ALJ's decision and an additional 30 days to submit objections and exceptions, if any. Tr. 12-13.  On March 23, 2016, the request for more time was granted. Tr. 5.  No additional information was provided to the Appeals Council and on April 12, 2017, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-4; *see* 20 C.F.R. § 404.981.

On June 12, 2017, Plaintiff, by counsel, filed a Complaint with this Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 18 and 19, which have been considered.

## II.  Findings of the ALJ

The ALJ made several findings:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2011.  Tr. 19.

2. The claimant did not engage in substantial gainful activity (SGA) during the period from his alleged onset date of November 24, 2010, the amended alleged onset date, through his date last insured of December 31, 2011.  *Id.*  The claimant's work after the amended alleged onset date did not rise to the level of SGA.  *Id.*

3. Through the date last insured (December 31, 2011), the claimant had the following severe impairments: disorders of the spine, history of left shoulder AC separation, and hypertension.  *Id.*  The ALJ also found that through the date last insured, the claimant's history of anemia, history of vertigo, history of episodic alcohol abuse, and history of depression represented non-severe impairments as they did not more than minimally limit the claimant's ability to perform basic work activities for 12 continuous months.  Tr. 19-20.  Regarding the claimant's mental impairments, the ALJ considered the four broad functional areas set out in the disability regulations for evaluating mental disorders in Listing 12.00C known as the "paragraph B" criteria.  Tr. 20.  The ALJ considered the claimant's treatment records with his primary care physician in 2010 through 2012 and claimant's hearing testimony regarding his daily activities from November 24, 2010, through December 31, 2011.  *Id.*  Based on the evidence considered, the ALJ determined that the claimant had *mild* restrictions in activities of daily living, *mild* difficulties in maintaining social functioning, *mild* difficulties in maintaining concentration, persistence, or pace, and *no* periods of decompensation.  Tr. 21.  The ALJ gave great weight to the State agency psychological consultants who opined that the medical evidence of record did not establish severe mental impairments during the adjudication period through the date last insured.  *Id.*

4. Through the date last insured, December 31, 2011, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.  Tr. 21.

5.  The claimant had the residual functional capacity RFC to perform medium work as defined in 20 CFR 404.1567(c) except with no more than occasional climbing of ladder[s], ropes, and scaffolds; no more than occasional stooping; no more than frequent kneeling, crouching, crawling and climbing of ramps or stairs; no more than frequent overhead reaching with the left upper extremity; and no concentrated use of moving machinery or concentrated exposure to the unprotected heights.  Tr. 21.

6.  The vocational expert testified that the claimant's past work history included sales clerk, light exertion, with an SVP of 3 and performed at the light level and that he had performed the job of selling marble countertops.  The closest job in the Dictionary of Occupational Titles (DOT) is sales representative, home furnishings, light exertion with an SVP of 5 (skilled), also performed at the light level.  Tr. 60-62; *see infra* at 6, n.5.  The ALJ adopted this testimony at step four of the sequential evaluation process.  Tr. 21.

7.  The claimant was 60 years old, which is defined as an individual of advanced age, on the date last insured (December 31, 2011).  The claimant subsequently changed age category to closely approaching the age of retirement.  Tr. 26.[3]

8.  The claimant has at least a high school education and is able to communicate in English.  *Id.*  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules (the Grids) as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.  *Id.*

9.  Through the date last insured (December 31, 2011), if the claimant had the RFC to perform the full range of medium work, a finding of 'not disabled' would be directed by Medical-Vocational Rules 203.15 and Rule 203.07.[4]  Tr. 26.  The ALJ determined, however,

---

[3]  "We consider that at advanced age (age 55 or older), age significantly affects a person's ability to adjust to other work.  We have special rules for persons of advanced age and for persons in this category who are closely approaching retirement age (age 60 or older).  See § 404.1568(d)(4)."  20 C.F.R. § 404.1563(e); *see infra* at 11-12.

that the claimant's ability to perform all or substantially all the requirements of this level work (medium, unskilled) has been impeded by additional limitations, and, as a result, he asked the vocational expert whether representative jobs exist in the national economy for an individual with the claimant's age, education, work experience, and RFC.  The vocational expert testified that such an individual could perform the representative occupations such as hand packager, store laborer, and dining room attendant, each with a medium exertion, unskilled, and an SVP of 2.[5]  *Id.*; Tr. 64-65.  The vocational expert testified that his testimony was consistent with the DOT "[w]ith the exception of the overhead reaching, which the DOT assumes overhead reaching in all -- it assumes reaching in all directions in the *DOT* and *COJ*.  And also with the exception of the employer tolerances with regards to off task behavior, absenteeisms and breaks."  Tr. 66-67.

10.    The claimant has not been under a disability, as defined in the Social Security Act, at any time from November 24, 2010, the

---

[4]  The ALJ applied the Grid rules for persons at advanced age (203.15) and closely approaching retirement age (203.07).  20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 3.  Tr. 26.

[5]  "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time."  20 C.F.R. § 404.1568(a).  A Specific Vocational Preparation (SVP) of 1 means "short demonstration only."  Dictonary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP.  An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month."  *Id.*  "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation."  *Id.*  Unskilled work corresponds to an SVP of 1 and 2.  Social Security Ruling (SSR) 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000).  Semi-skilled work corresponds to an SVP of 3 and 4.  *Id.*  Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations.  SSR 85-15, 1985 SSR LEXIS 20, at *10-11 (1985).  "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.  If someone can do medium work, we determine that he or she can also do sedentary and light work."  20 C.F.R. § 404.1567(c).

amended alleged onset date, through December 31, 2011, the date last insured.  Tr. 27.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles.  42 U.S.C. § 405(g); Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[6]

---

[6]  "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted).  "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ.  A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations omitted). A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 404.1505(a), 404.1509 (duration requirement).

Both the "impairment" and the "inability" must be expected to last not less than 12 months. Barnhart v. Walton, 535 U.S. 212 (2002). In addition, an individual is entitled to DIB if he is under a disability prior to the expiration of his insured status. *See* 42 U.S.C. § 423(a)(1)(A); Moore v.

Barnhart, 405 F.3d at 1211; Torres v. Sec'y of Health & Human Servs., 845

F.2d 1136, 1137-38 (1st Cir. 1988); Cruz Rivera v. Sec'y of Health &

Human Servs., 818 F.2d 96, 97 (1st Cir. 1986).

The Commissioner analyzes a claim in five steps.  20 C.F.R.

§ 404.1520(a)(4)(i)-(v).

1. Is the individual currently engaged in substantial gainful
   activity?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet
   or equal those listed in Appendix 1 of 20 C.F.R. Part 404,
   Subpart P?

4. Does the individual have the RFC to perform work despite
   limitations and are there any impairments which prevent past
   relevant work?[7]

---

[7] An RFC is the most a claimant can still do despite limitations.  20 C.F.R.
§ 404.1545(a)(1).  It is an assessment based upon all of the relevant evidence including
the claimant's description of her limitations, observations by treating and examining
physicians or other persons, and medical records.  *Id.*  Although an ALJ considers
medical source opinions, the responsibility for determining claimant's RFC lies with the
ALJ.  20 C.F.R. § 404.1546(c); *see* SSR 96-5p, 1996 SSR LEXIS 2, at *12 (July 2,
1996) (rescinded eff. Mar. 27, 2017) ("The term "residual functional capacity
assessment" describes an adjudicator's finding about the ability of an individual to
perform work-related activities.  The assessment is based upon consideration of all
relevant evidence in the case record, including medical evidence and relevant
nonmedical evidence, such as observations of lay witnesses of an individual's apparent
symptomatology, an individual's own statement of what he or she is able or unable to
do, and many other factors that could help the adjudicator determine the most
reasonable findings in light of all the evidence."); *see also* Cooper v. Astrue, 373 F.
App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination
"is within the province of the ALJ, not a doctor").  The Court will apply the SSR in effect
when the ALJ rendered her decision.  *See generally* Bagliere v. Colvin, No. 1:16CV109,
2017 U.S. Dist. LEXIS 8779, at *10-18, (M.D. N.C. Jan. 23, 2017), *adopted*, 2017 U.S.
Dist. LEXIS 51917 (M.D. N.C. Feb. 23, 2017).

   5.  Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in

disapproval of the application for benefits.  A positive finding at step three

results in approval of the application for benefits.  At step four, the claimant

bears the burden of establishing a severe impairment that precludes the

performance of past relevant work.  Consideration is given to the

assessment of the claimant's RFC and the claimant's past relevant work.  If

the claimant can still do past relevant work, there will be a finding that the

claimant is not disabled.  If the claimant carries this burden, however, the

burden shifts to the Commissioner at step five to establish that despite the

claimant's impairments, the claimant is able to perform other work in the

national economy in light of the claimant's RFC, age, education, and work

experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224,

1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 404.1520(a)(4)(v), (e) & (g).

An ALJ may make this determination either by applying the Grids or by

obtaining the testimony of a vocational expert.  Phillips, 357 F.3d at 1239-

40; *see* 20 C.F.R. pt. 404, subpart. P, app. 2.  If the Commissioner carries

this burden, the claimant must prove that he or she cannot perform the

work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007,

1011 (11th Cir. 1987).

Plaintiff bears the burden of proving that he is disabled, and

consequently, is responsible for producing evidence in support of his claim.

See 20 C.F.R. § 404.1512(a); Moore, 405 F.3d at 1211.

## IV.  Legal Analysis

### Substantial evidence supports the ALJ's determination that Plaintiff is not disabled.

#### A.

Plaintiff makes several arguments.  First, Plaintiff argues the ALJ

erred when he determined Plaintiff was 60 years old, which is defined as an

individual of advanced age on the date last insured (December 31, 2011)

and that he subsequently changed age category to closely approaching

retirement age.[8]  ECF No. 18 at 18.  According to Plaintiff, this "is simply

incorrect, as a person 55 to 60 is a person of advanced age under the

medical vocational guidelines.  A person who is 60 as of the date the last

---

[8]  Considering Plaintiff's age as of the date last insured, 60, Plaintiff argues that he should have been found disabled pursuant to Grid Rule 201.06 covering an RFC limited to sedentary work for a person closely approaching retirement age.  ECF No. 18 at 16; see 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 1 (sedentary work).  As noted herein, substantial evidence supports the ALJ's RFC determination that Plaintiff can perform medium work with restrictions and is not disabled under the applicable Grids. See infra at 12-13.

insured, such as Plaintiff, is a person closely approaching retirement age, see table 3." *Id.*

A person of advanced age is age 55 or older, whereas a person who is closely approaching retirement age is age 60 or older. *See supra* at 5, n.3; 20 C.F.R. § 404.1563(e). The ALJ stated that *if* Plaintiff had the RFC to perform a full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rules 203.07 (person closely approaching retirement age) and 203.15 (person of advanced age.) Tr. 26; *see* 20 C.F.R. pt. 404, subpt. P, app. 2, Table No. 3 (medium work). To be applicable, each rule requires a person to have a high school education or more and previous work experience at either a skilled or semi-skilled level, with skills non-transferable, as here. The ALJ applied the Grid Rules to both age categories, each with the same result.

The ALJ did not stop the analysis here. He further stated that Plaintiff's ability to perform this level of work was impeded by additional limitations. As a result, the ALJ asked the vocational expert whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and RFC. Given these factors, the vocational expert opined that such an individual would be able to perform several

representative occupations with medium exertion, unskilled, with an SVP of

2.  Tr. 26.

Although Plaintiff at age 60 was a person closely approaching

retirement not a person of advanced age, the ALJ did not err in applying

the Grids to Plaintiff.

B.

Plaintiff further argues that the ALJ's decision is not supported by

substantial evidence and that the ALJ did not properly weigh the opinion of

treating physician, Hal M. Brodsky, M.D.  ECF No. 18 at 18-26.

At step two of the sequential evaluation process, the ALJ determined

that Plaintiff had several severe impairments.  Tr. 19.  Notwithstanding, the

ALJ also considered Plaintiff's history of anemia, history of vertigo, history

of episodic alcohol abuse, and history of depression.  Tr. 19-21.  The ALJ

began the discussion of these issues referring to Plaintiff's follow-up visit

with Dr. Brodsky in February 2011.

> During follow-up with Dr. Brodsky, the claimant's primary care
> physician, in February of 2011, the claimant reported an episode of
> vertigo two weeks earlier, which lasted 14 hours.  He stated it was
> the fourth time he had had vertigo over the decades and that it
> usually lasted a few hours.  The claimant was diagnosed with
> vertigo; however, both physical and neurologic exams were
> unremarkable (Exhibit 2F/45-46).  In September of 2011, the
> claimant was diagnosed with iron deficiency anemia based on lab
> results (Exhibit 2F/39-41).

In regards to the claimant's mental impairments, the undersigned has considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing of Impairments (20 CFR, Part 404, Subpart P, Appendix 1). These four broad functional areas are known as the "paragraph B" criteria.

The evidence of record shows the claimant has not received any treatment from a mental health professional; and treatment records from Dr. Brodsky, his primary care physician, document normal mental status findings [*see, e.g.*, Tr. 338, 342, 345-46, 349, 353]. These records show the claimant was diagnosed with episodic alcohol abuse once in November of 2010. He was also diagnosed with depression once in October of 2011 in the context of caring for his father who was unfortunately terminally ill; however, he was not prescribed any psychotropic medication [Tr. 341]. The undersigned also notes that there was no diagnosis of depression at a prior appointment in June of 2011 or at a subsequent appointment in January of 2012 (Exhibit 2F). Furthermore, the claimant did not testify to any mental health problems or to any problems with excessive alcohol use through the date last insured.

The Administrative Law Judge also notes that, at the hearing, the claimant testified to daily activities, which were not entirely limited prior to the date last insured. He testified that, during the adjudication period (November 24, 2010, thru December 31, 2011), he read a lot of history books and tried to write a couple of western novels. He stated he spent a lot of time in front of the computer and helped around the house doing cooking and laundry. He stated he needed some assistance from his wife with bathing and dressing, that he did not go grocery shopping due to difficulties walking, and that he generally only left the house to go to doctor appointments. Treatment records note that he provided care for a family member as discussed above (Exhibit 2F).

The undersigned further notes that after the date last insured during follow-up with Dr. Brodsky in April of 2012, the claimant was assessed with alcohol abuse, episodic behavior (Exhibit 2F/33) [Tr. 336]. While it was also noted during a hospitalization for neck surgery in April of 2012 that the claimant was back to drinking again

with a history of heavy drinking in the past (Exhibit 1F/40) there is no evidence of ongoing substance or alcohol abuse in treatment records during the adjudication period from the alleged onset date through the date last insured, which is consistent with the claimant's testimony.  This is also consistent with mental status findings and the course and frequency of mental health treatment during that period as discussed above.  As such, no severe mental impairment is established during the adjudication period.

Tr. 20.

The ALJ began the RFC determination with a discussion of Plaintiff's

testimony, which is quite detailed. Tr. 22.  The ALJ discussed the medical

evidence beginning with Dr. Brodsky's initial examination of Plaintiff in

November 2000.  Tr. 23.

Turning to the treatment records during adjudication period,  in November of 2010, the claimant presented to Hal Brodsky, M.D., his primary care physician,  with complaints of pain with range of motion of the left shoulder after falling 3-4 feet off a ladder four days earlier. Examination revealed a positive impingement test.  X-rays of the left shoulder revealed a high degree AC separation and probable non-displaced fracture of scapula [Tr. 35, 74, 350, 423-53].  In December of 2010, the claimant presented to The Orthopaedic Institute on referral after his fall from a ladder and shoulder injury.  Dr. Shinn noted that scapular bony fractures reliably healed with no intervention and that the AC separation was a re-aggravation of a previous injury.  Dr. Shinn stated that the claimant's range of motion was normal and that he did not believe the claimant required physical therapy.  He refilled the claimant's Percocet and added Tramadol (Exhibit 2F) [Tr. 451-53].

About five to six months later, in June of 2011, the claimant presented to Dr. Brodsky for a physical [Tr. 345-47].   He reported feeling well with minor complaint.  Examination was essentially unremarkable except for a lack of flexibility with hip range of motion, especially flexion.  Dr. Brodsky's diagnosis was sciatica and allergic

rhinitis. Four months later, in October of 2011, the claimant was seen for complaints of a popping feeling in his right ear at which time he was diagnosed with allergic rhinitis and depression.  Dr. Brodsky noted that he spoke with the claimant at length about challenges he was facing caring for his father, who was unfortunately terminally ill (Exhibit 2F) [Tr. 341].

The undersigned notes that three months after the date last insured and adjudication period, in April of 2012, MRI of the lumbar spine revealed the S1 segment was sacralized on the left with associated psuedoarthrosis, best seen on prior CT in March of 2005; grade I degenerative anterolisthesis at L5-S1 with associated severe foraminal stenosis on the left, which correlated with left L5 radiculopathy, and severe central canal stenosis, moderate to severe foraminal stenosis on the right, and severe bilateral facet arthropathy; and mild to moderate multilevel degenerative spondylosis (Exhibit 2F).  In April of 2012, the claimant underwent an anterior diskectomy and fusion with instrumentation at C3-4 and C4-5 due to cervical spondylosis with stenosis and myelopathy (Exhibit 1F).  Four months later, in August of 2012, the claimant underwent a L5-S1 laminotomies with bilateral foraminotomies, interleminar instrumented fusion of L5-S1, bilateral facet joint fusion, and non-segmental posterior spinous process instrumentation at L5-S1 (Exhibit 3F).

The claimant continued follow-up treatment for impairments with Florida Neurosurgical Associates (Eric Scott, M.D.), Dr. Brodsky and Interventional Medical Associates (Robert Valentine, M.D.), all after his date last insured.[9]  Treatment has included medication and lumbar injections, and in November of 2013, the claimant reported his pain as 2.5 on a 10 point scale, with examination essentially unremarkable except for 1/4 bicep reflexes.  At that time, the lumbar spine had full range of motion with no lumbar paraspinal tenderness, no midline tenderness to palpation, and no sacroiliac joint tenderness.  Strength testing of the major muscles was 5/5; and there was no clubbing, cyanosis, or petechiae of the extremities.

---

9  On May 22, 2013, Eric Scott, M.D., Reported Plaintiff underwent a left L5-S1 facet block – post-injection pain was 0/10.  "He reports he has continued to do well thus far.  He is using Oxycodone now just occasionally."  Tr. 499.

> Examinations in January and February of 2014 were essentially
> unchanged (Exhibit 7F) [Tr. 599-611].

Tr. 23-24.

Plaintiff relies heavily on Dr. Brodsky's clinical assessment of pain

completed on January 20, 2016. ECF No. 18 at 19-20. This is a check-off

evaluation provided to Plaintiff's counsel. Tr. 643-47. Dr. Brodsky

concluded that Plaintiff had extreme levels of restriction in the ability to

perform activities within a schedule, maintain regular attendance and be

punctual within customary tolerances and in the ability to complete a

normal workday and workweek without interruptions from pain and to

perform at a consistent pace without an unreasonable number and length

of rest periods. Tr. 647.

> The Administrative Law Judge also considered the opinion of
> Dr. Brodsky dated January 20, 2016 and gives limited weight
> (Exhibit 8F) [Tr. 643-47]. The undersigned notes that Dr. Brodsky
> has a treatment history with the claimant; however, his opined
> severity is not supported by his treatment records from the
> adjudication period (Exhibit 2F). Dr. Brodsky's opinion reports
> moderate pain, with subjective reports of marked pain, as well as
> mild to mostly extreme limitations opined in functioning. Among
> other things, Dr. Brodsky opinion also indicates that the claimant
> was being medicated for depression. Dr. Brodsky further opined
> that the opinions and limitations indicated in his January 20, 2016
> clinical assessment of pain have applied since September 12, 2008.
> [10] However, as stated above, the opined severity of Dr. Brodsky's

---

10  The ALJ noted that treatment records outside the adjudication period from the
alleged onset date through the date last insured were "considered for longitudinal

opinions and limitations is not fully consistent with his treatment records or the medical evidence of record during the adjudication period. For example, treatment records for this period through December 2011, note that the claimant was caring for a family member. Furthermore, Dr. Brodsky's treatment notes consistently show essentially normal mental status findings through the date last insured of December 31, 2011, and the claimant was assessed with depression only once in October of 2011. Furthermore, there is no evidence in the record of any treatment from a mental health professional or that the claimant was prescribed any psychotropic medications on an ongoing basis during the adjudication period from the alleged onset date through the date last insured. As such, there is no evidence of more than mild limitation from any mental impairment, and no evidence of disabling physical impairments or work preclusive pain, during the adjudication period. Dr. Shinn found that the claimant's shoulder range of motion was normal and that he did not believe the claimant required physical therapy, and medications were provided (Exhibit 2F). About five to six months later, in June of 2011, the claimant presented to Dr. Brodsky for a physical. He reported feeling well with minor complaints. At the time, examination was essentially unremarkable except for a lack of flexibility with hip range of motion, especially flexion, but with no evidence of significant ongoing treatment for a severe hip impairment. As such, only limited weight can be accorded.

Tr. 24-25.[11]

---

history purposes only, and opinions that are applicable to the period outside the adjudication period are accorded no weight." Tr. 24.

[11] Dr. Brodsky's conclusions of disability would not be entitled to any special weight or deference, however. The regulations expressly exclude such a disability opinion from the definition of a medical opinion because it is an issue reserved to the Commissioner and a medical source is not given "any special significance" with respect to issues reserved to the Commissioner, such as disability. 20 C.F.R. § 404.1527(d)(1), (3); SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017). In Lewis v Callahan, the court noted "that we are concerned here with the doctors' evaluations of [the claimant's] condition and the medical consequences thereof, not their opinion of the legal consequences of his condition. Our focus is on the objective medical findings made by each doctor and their analysis based on those medical findings." 125 F.3d at 1440. Further, to the extent Dr. Brodsky opined Plaintiff "could not work, that was not a medical opinion and was not entitled to any special

The ALJ also considered the opinions of State agency consultants and accorded them "great weight."[12]  Tr. 24.  The State agency consultants opined Plaintiff was capable of a range of medium work.  Tr. 75-77, 87-90. They also opined Plaintiff had no severe mental limitations.  Tr. 73-74, 86-87.

> As for the opinion evidence applicable to the adjudication period, the Administrative Law Judge considered the opinions of the State agency consultants and has accorded them great weight (Exhibits 1A and 3A).  The undersigned notes that these consultants comprise qualified physicians and psychologists who are experts in the evaluation of medical and/or psychological issues disability claims under the Social Security Act (SSR 96-6p).  Furthermore, their opinions are supported by detailed explanation, rationale, an analysis of the medical evidence of record, and these opinions are generally consistent with the medical and overall evidence, as well as the course and frequency of treatment during the adjudication period (through December 31, 2011).  As such, great weight is supported.

Tr. 24; Tr. 70-79 (Exhibit 1A -- Initial Level, Nov. 2013); 81-91 (Exhibit 3A -- Reconsideration Level, Feb./Mar. 2014).[13]

---

significance.  20 C.F.R. § 404.1527(d)."  Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *9 n.1 (11th Cir. Jan. 30, 2018).

[12]  These consultants considered Plaintiff to be a person closely approaching retirement age.  Tr. 70, 81; see supra at 11-12, regarding Plaintiff's first argument.

[13]  Although not given the same controlling weight or deference as the opinion of treating physicians, the findings of a state agency medical consultant regarding the nature and severity of a claimant's impairments must be treated as expert opinion at the ALJ and Appeals Council levels of administrative review.  See SSR 96-6p, 1996 SSR LEXIS 3, at *4 (July 2, 1996) (rescinded and replaced by SSR 17-2p eff. Mar. 27, 2017). The findings of a State agency medical consultant may provide additional evidence to support the ALJ's findings.  See Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986).

The ALJ summarized the RFC findings.

In sum, the above residual functional capacity assessment is supported by the following.   First, at the hearing, the claimant testified to daily activities, which were not entirely limited prior to the date last insured (December 31, 2011) [Tr. 48-52].[14]  The claimant testified to reading a lot of history books and trying to write a couple of western novels.   He stated he spent a lot of time in front of the computer and helped around the house doing cooking and laundry. While he stated he needed some assistance from his wife with bathing and dressing, he did not go grocery shopping due to difficulties walking, and generally only left the house to go to doctor appointments, there is no evidence that any such restrictions were medically necessary or instructed by treating providers. Furthermore, the claimant was also noted as providing care for a family member in October 2011 [Tr. 341].

Second, during the adjudication period (November of 2010 thru December of 2011), the evidence of record shows the claimant's treatment was essentially routine and/or conservative in nature. Medical records show the claimant saw his primary care physician on a few occasions and that he underwent x-rays of his left shoulder. The claimant also saw Dr. Shinn, an orthopedist, on one occasion; however, examinations during this period did not document any significant objective medical findings.   Furthermore, x-rays of the lumbar spine performed in  January of 2012, just one month after the date last insured, document findings that were similar/unchanged from prior exam in May of 2008 (Exhibit 2F), during which time the claimant was performing at the substantial gainful activity level.   The undersigned  also notes that the record does not document any

---

[14]   The ALJ may consider a claimant's daily activities when evaluating subjective complaints of disabling pain and other symptoms.   Macia v. Bowen, 829 F.2d 1009, 1012 (11th Cir. 1987); 20 C.F.R. § 404.1529(c)(3)(i).   *But see* Lewis v. Callahan, 125 F.3d at 1441 ("participation in everyday activities of short duration, such as housework or fishing" does not disqualify a claimant from disability).   Although the ALJ did not expressly refer to the three-part pain standard set forth in Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002), the ALJ's findings, discussion, and citation to 20 C.F.R. § 404.1529, Tr. 22, indicate that the pain standard was applied.   Wilson, 284 F.3d at 1226.

treatment from a specialist after the claimant's one time visit in December of 2010, until March of 2012 (Exhibits 3F and 4F), which is after the claimant's date last insured.

For all these reasons as discussed herein, the above residual functional capacity is supported by the overall evidence during the adjudication period from the alleged onset date through the date last insured.

Tr. 25.

### C.

Plaintiff argues the ALJ should have given greater weight to

Dr. Brodsky's January 2016 opinion that Plaintiff had disabling mental and

physical functional limitations beginning on September 12, 2008.  Tr. 643-

47.

Dr. Brodsky's January 20, 2016, evaluation was a series of checkbox

notations without written explanation of his opinion, which courts have

found are "not particularly informative" and are "weak evidence at best."

*See* Teague v. Astrue, 638 F.3d 611, 615 (8th Cir. 2011) ("Given that the

'check-off form' did not cite any clinical test results or findings and

Dr. Lowder's previous treatment notes did not report any significant

limitations due to back pain, the ALJ found that the MSS was entitled to

'little evidentiary weight.'"); Dixon v. Astrue, No. 5:09-cv-320/RS/EMT, 2010

U.S. Dist. LEXIS 125831, at *46-48 (N.D. Fla. Oct. 26, 2010) (explaining

that ALJ properly rejected opinions expressed by treating physician on

"check-off" type forms where treating physician's own treatment notes did not support opinions expressed on those forms); <u>Jones v. Comm'r of Soc. Sec.</u>, 478 F. App'x 610, 612 (11th Cir. 2012) (unpublished) (holding that the boxes checked by the doctors did not constitute their actual RFC assessment because checking boxes did not indicate the degree and extent of the claimant's limitations); *see also* <u>Foster v. Astrue</u>, 410 F. App'x 831, 833 (5th Cir. 2011) (unpublished) (physicians use of "questionnaire" format typifies "brief or conclusory" testimony).  Simply put, Dr. Brodsky did not provide an acceptable explanation for his opinions or refer to objective medical evidence to support his opinions.  *See* <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1159-60 (11th Cir. 2004).

Also, as the finder of fact, the ALJ is charged with the duty to evaluate all the medical opinions of the record and resolve conflicts that might appear.  20 C.F.R. § 404.1527.[15]  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant

---

[15]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 404.1520c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 404.1527(b) & (c)(1)-(6).

The opinion of the claimant's treating physician must be accorded considerable weight by the Commissioner unless good cause is shown to the contrary.  Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). This is so because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. § 404.1527(c)(2).  "This requires a relationship of both duration and frequency."  Doyal v. Barnhart, 331 F.3d 758, 762 (10th Cir. 2003).

The reasons for giving little weight to the opinion of the treating physician must be supported by substantial evidence, Marbury v. Sullivan, 957 F.2d 837, 841 (11th Cir. 1992), and must be clearly articulated. Phillips, 357 F.3d at 1241.  "The Secretary must specify what weight is

given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  MacGregor, 786 F.2d at 1053.

The ALJ may discount the treating physician's opinion if good cause exists to do so.  Hillsman v. Bowen, 804 F. 2d 1179, 1181 (11th Cir. 1986). Good cause may be found when the opinion is "not bolstered by the evidence," the evidence "supported a contrary finding," the opinion is "conclusory or inconsistent with [the treating physician's own medical records," the statement "contains no [supporting] clinical data or information," the opinion "is unsubstantiated by any clinical or laboratory findings," or the opinion "is not accompanied by objective medical evidence or is wholly conclusory."  Lewis, 125 F.3d at 1440; Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991) (citing Schnorr v. Bowen, 816 F.2d 578, 582 (11th Cir. 1987)).  Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight to the extent they are supported by clinical or laboratory findings and are consistent with other evidence as to a claimant's impairments.  Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).

Opinions on some issues, such as whether the claimant is unable to work, the claimant's RFC, and the application of vocational factors, "are not

medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case; i.e., that would direct the determination or decision of disability." 20 C.F.R. § 404.1527(d); *see* Bell v. Bowen, 796 F.2d 1350, 1353-54 (11th Cir. 1986). "[T]reating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance." SSR 96-5p, 1996 SSR LEXIS 2, at *6 (July 2, 1996) (rescinded eff. Mar. 27, 2017). Although physician's opinions about what a claimant can still do or the claimant's restrictions are relevant evidence, such opinions are not determinative because the ALJ has responsibility of assessing the claimant's RFC.

The Court recognizes as did the ALJ that Dr. Brodsky was Plaintiff's primary care physician, Tr. 20, 25, and due deference has been afforded his longitudinal treatment notes and opinion. *See supra* at 17, n.10. Dr. Brodsky's opinion is not supported by his treatment records. As noted by the ALJ, Plaintiff received no treatment for mental health issues during the relevant period prior to the date last insured and Dr. Brodsky's treatment notes contained no mention treatment for Plaintiff's diagnosis of depression and did not identify any limitations that diagnosis imposed.

Tr. 20, 24, 304-496.  The ALJ considered Dr. Brodsky's patient notes

regarding Plaintiff's physical issues and did not find them compelling.

Tr. 20, 23-25.

Substantial evidence supports the ALJ's consideration of the medical

evidence of record, including Dr. Brodsky's evaluations, and Plaintiff's

reports of daily activities.[16]  *See* Ybarra v. Comm'r of Soc. Sec., 658 F.

App'x 538, 543 (11th Cir. 2016) (unpublished).  Aside from Dr. Brodsky's

evaluation, no treating physician opined that Plaintiff's impairments are of

such severity as to preclude him from working in any capacity.  Although

Plaintiff experienced shoulder pain related to a joint separation after he fell

from a ladder in November 2010, Dr. Shinn noted that his range of motion

---

[16]  *See* Tr. 22, 25.  The credibility of the claimant's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain.  Lamb v. Bowen, 847 F.2d 698, 702 (11th Cir. 1988).  After considering a claimant's complaints of pain, an ALJ may reject them as not credible.  *See* Marbury, 957 F.2d at 839 (citing Wilson v. Heckler, 734 F.2d 513, 517 (11th Cir. 1984)).  If an ALJ refuses to credit subjective pain testimony where such testimony is critical, the ALJ must articulate specific reasons for questioning the claimant's credibility.  *See* Wilson v. Barnhart, 284 F.3d 1225.  Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.  *Id.*  Subjective symptoms can be overstated, so a claimant's subjective allegations of pain or other symptoms alone will not establish that she is disabled.  42 U.S.C. § 423(d)(5)(A); 20 C.F.R. §§ 404.1528(a), 404.1529(a). Effective March 28, 2016, the Social Security Administration adopted SSR 16-3p, 2016 SSR LEXIS 4 (Mar. 28, 2016), superseding SSR 96-7p, pertaining to assessing the claimant's credibility.  SSR 16-3p "does not apply retroactively because it has no language suggesting, much less requiring, retroactive application."  Contreras-Zambrano v. Soc. Sec. Admin., 2018 U.S. App. LEXIS 2531, at *8 (11th Cir. Jan. 30, 2018) (citation omitted).

was normal and that he did not require physical therapy.  Tr. 453.  In June

2011, Plaintiff reported his shoulder hurts when he pushed out of a chair.

He felt well with only minor complaints.  Tr. 345.  These relatively mild

physical findings on examination do not support Dr. Brodsky's opinion that

Plaintiff has disabling limitations.

Substantial evidence supports the ALJ's RFC assessment that

Plaintiff can perform medium work with limitations and reliance on the

vocational expert's testimony that Plaintiff could perform his past relevant

work and other jobs in the national economy.  No error has been shown.

Tr. 21, 25-27.

## V. Conclusion

Considering the record as a whole, the ALJ's findings are based upon

substantial evidence in the record and the ALJ correctly applied the law.

Accordingly, it is respectfully recommended that the decision of the

Commissioner to deny Plaintiff's application for Social Security benefits be

**AFFIRMED** and Judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on April 19, 2018.

**s/ Charles A. Stampelos**
**CHARLES A. STAMPELOS**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  <u>Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control</u>.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.